IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CRIMINAL NO. SA: 12-CR-359 OG |
| EDDIE RAMOS, (4), | § § § | |
| Defendant. | § | |

**PLEA AGREEMENT**

The United States of America, by and through Bettina J. Richardson, Assistant United States Attorney for the Western District of Texas (hereinafter referred to as "the Government"), and Defendant EDDIE RAMOS (hereinafter referred to as "Defendant"), individually and by and through Debra Parker, Attorney for the Defendant, hereby enter into the following plea agreement in the above-referenced cause pursuant to Rule 11(c)(1), Fed. R. Crim. P.:

**1. Defendant's Agreement to plead Guilty:**

Defendant, EDDIE RAMOS, agrees to plead guilty to Counts EIGHT, TWELVE, THIRTEEN, FOURTEEN, FIFTEEN and SEVENTEEN of the Indictment in this case, which charges the Defendant with the crime of False Statement During Purchase of a Firearm, in violation of Title 18, United States Code, Section 924(a)(1)(A), as well as aiding and abetting, in violation of Title 18, United States Code, Section 2.

**2. Punishment to be Imposed:**

The Defendant understands the sentence imposed in this case will be determined by the Court in accordance with Title 18 U.S.C. § 3553(a) as construed by the United States Supreme

1

Court in its January 12, 2005 decisions in United States v. Booker and United States v. Fanfan. The Sentencing Guidelines are now considered advisory. The Defendant stipulates no person has specifically promised what sentence he will receive. The Defendant fully understands the punishment which may be imposed for the crimes to which he is pleading guilty is:

(1) a maximum term of imprisonment of five (5) years;
(2) a maximum fine of $250,000.00;
(3) a maximum term of supervised release of three (3) years; and
(4) a mandatory $100.00 special assessment pursuant to the Victims of Crimes Act.

Defendant understands and acknowledges the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for this offense. The Defendant acknowledges he has discussed this range of punishment and penalties with his attorney, and still wants to plead guilty in this case.

### 3. Factual Basis for Plea

In support of his plea of Guilty to Counts EIGHT, TWELVE, FOURTEEN, FIFTEEN and SEVENTEEN, Eddie RAMOS stipulates to the following factual statements.

**As to Count EIGHT:**
On December 31, 2011, Virginia RICARTE-JONES was driven to Action Pawn #10, San Antonio, Texas, by Jose RICARTE where, using funds provided by Jose RICARTE, she purchased two AK-47s, which she immediately transferred to J. RICARTE. J.RICARTE, in turn, transferred the weapons to Eddie RAMOS, who then transferred them to Jimmy TORRES-Hoyos. Virginia RICARTE-JONES made a false statement during the purchase of a firearm from a licensed firearms dealer, as she was not the actual purchaser.

**As to Count TWELVE:**
On January 23, 2012, Pablo HERNANDEZ-RAMOS, using funds provided by Eddie RAMOS, purchased two AK-47s from Texas Guns, San Antonio, Texas. Immediately following the acquisition, the assault rifles were transferred to Eddie RAMOS, who in turn, transferred them to Jimmy TORRES-Hoyos. Pablo HERNANDEZ-RAMOS made a false statement during the purchase of a firearm from a licensed firearms dealer, as he was not the actual purchaser.

**As to Count FOURTEEN:**
On December 30, 2011, Mary Helen RAMOS, using funds provided by Eddie RAMOS, purchased one AK-47 from Action Pawn #11, San Antonio, Texas. Immediately following the acquisition, the assault rifle was transferred to Eddie RAMOS, who in turn, transferred it to

2

Jimmy TORRES-Hoyos. Mary Hellen RAMOS made a false statement during the purchase of a firearm from a licensed firearms dealer, as he was not the actual purchaser.

**As to Count FIFTEEN:**
On January 28, 2012, David RICARTE was driven to two gun shops in San Antonio, Texas, by Jose RICARTE where, using funds provided by Jose RICARTE, he purchased two AK-47s, which he immediately transferred to J. RICARTE. J.RICARTE, in turn, transferred the weapons to Eddie RAMOS, who then transferred them to Jimmy TORRES-Hoyos. David RICARTE made a false statement during the purchase of a firearm from a licensed firearms dealer, as he was not the actual purchaser.

**As to Count SEVENTEEN:**
On January 5, 2012, Genoveva CUELLAR, using funds provided by Eddie RAMOS, purchased two AK-47s from Nagels Gun Shop, which she immediately transferred to Eddie RAMOS, who then transferred them to Jimmy TORRES-Hoyos. Genoveva CUELLAR made a false statement during the purchase of a firearm from a licensed firearms dealer, as she was not the actual purchaser.

Eddie RAMOS further stipulates:

1. On April 17th, 2012, Special Agent Alberto Espinosa, with Bureau of Alcohol, Tobacco, Firearms and Explosives, and Special Agent Bryan Wade, with Homeland Security Investigations, interviewed Eddie RAMOS to discuss his involvement in the acquisition of assault rifles on behalf of Jimmy TORRES. Eddie RAMOS is a prohibited person as articulated by 18 U.S.C. § 922(g)(1) as he has been convicted of the felony offense of Aggravated Assault with a deadly weapon.

3. E. RAMOS identified Jimmy TORRES-Hoyos and Ernesto ARMIJO from two six-person photo lineups, as "El Gallo" and "El Gordo," the two individuals who recruited him to purchase on their behalf. E. RAMOS could not purchase firearms himself, because he is a prohibited person (a felon).

3. E. RAMOS recruited the following individuals, directly or through Jose RICARTE, to serve as straw-purchasers.

    a. His father, Pablo HERNANDEZ-RAMOS,
    b. A family friend, Virginia RICARTE-JONES,
    c. his mother, Mary Helen RAMOS,
    d. David RICARTE,
    e. his mother-in-law, Genoveva CUELLAR,
    f. Jose RICARTE,
    g. his common law wife, Joann GARCIA, and
    h. his brother, Michael RAMOS.

4. E. RAMOS positively identified Jose "Joey" RICARTE from a six person photo lineup, as the one who drove some of the straw-purchasers to various gun shops. E. RAMOS stated

3

that, during these transactions, he received the cash for the rifles from TORRES, gave it to J. RICARTE, who would give it to the straw-purchasers. E. RAMOS admitted he was present at the transactions and that the assault rifles were placed into TORRES' black SUV.

5. E. RAMOS knew the guns purchased were going to Mexico.

6. E. RAMOS also told agents that his brother, Michael RAMOS, straw purchased two rifles for him. E. RAMOS received the money for the firearms from TORRES and gave it to his brother. Once the rifles were purchased, Eddie RAMOS observed M. RAMOS placed them in TORRES' vehicle. M. RAMOS was paid $200.00 for his participation in the acquisition of the assault rifles.

7. E. RAMOS enlisted his mother, Mary Helen RAMOS, as a straw-purchaser. E. RAMOS and his mother drove to the gun store together, where they were met by TORRES and other unknown subjects. TORRES gave E. RAMOS the cash for the straw purchase, which he gave to his mother. After the purchase, E. RAMOS transferred the rifle to TORRES, placing it in TORRES' black SUV. E. RAMOS was given $200 for the purchase, which he gave to his mother.

8. Genoveva CUELLAR, E. RAMOS' mother-in-law, straw-purchased two rifles. TORRES and other unknown subjects met them at the gun store where E. RAMOS was given the cash for the straw purchase, which he gave to CUELLAR. At the completion of the purchase, E. RAMOS gave the rifles to TORRES, who paid E. RAMOS $200. E. RAMOS gave the $200 to CUELLAR.

9. E. RAMOS' common law wife, Joann GARCIA, straw purchased two rifles at his request. E. RAMOS provided transportation to the gun shops where they were met by TORRES and ARMIJO. E. RAMOS was provided the cash for the straw purchase, which he gave to J. GARCIA. E. RAMOS entered the gun store with J. GARCIA to assist in the purchase. At the completion of the purchase, E.RAMOS transferred the rifles to TORRES, and was given $200.

10. At E. RAMOS' request, Jose RICARTE recruited family friend, David RICARTE, to straw-purchase two rifles. E. RAMOS drove his own pickup truck to these transactions, with J. RICARTE and D. RICARTE riding together in J. RICARTE'S white BMW. Once at the gun shops, they were met by TORRES and ARMIJO, where TORRES provided the cash for the purchase to E. RAMOS. E. RAMOS gave the cash to J. RICARTE, who handed it to D. RICARTE. At the completion of the purchase, D. RICARTE turned the rifles over to J. RICARTE, who gave them to E. RAMOS, who then transferred them to TORRES. E. RAMOS was given $200 for the straw purchase, which he gave to J. RICARTE to pay D. RICARTE.

11. The acts described above took place in the Western District of Texas.

## 4. Defendant's Waiver of Right to Appeal or Challenge Sentence:

The Defendant is aware his sentence may be up to the maximum authorized by statute for this offense. He is also aware the sentence to be imposed does not provide for parole. By entering into this agreement, and as a term of this agreement, the Defendant voluntarily and knowingly waives the right to appeal his sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742. The Defendant also voluntarily and knowingly waives his right to contest the ultimate sentence or the manner in which it was determined in any post-conviction proceeding, including, but not limited to, a proceeding pursuant to 28 U.S.C. § 2255; provided, however, that consistent with principles of professional responsibility imposed on the Defendant's counsel and counsel for the Government, the Defendant does not waive his right to challenge his sentence to the extent it is the result of a violation of his constitutional rights based on claims of ineffective assistance of counsel or prosecutorial misconduct of constitutional dimension.

The Defendant waives his rights to challenge the sentence imposed, knowing his sentence has not yet been determined by the Court. The Defendant is aware that any estimate of the sentencing range he may receive from his counsel, the Government or the Probation Office, is not a promise, did not induce his guilty plea or waiver, and does not bind the Government, the Probation Office, or the Court. In other words, the Defendant understands he cannot challenge the sentence imposed by the District Court, even if it differs substantially from any sentencing range estimated by his attorney, the attorney for the Government or the Probation Officer. Realizing the uncertainty in estimating what sentence he will ultimately receive, the Defendant knowingly and voluntarily waives his right to appeal the sentence or to contest it in any post-

conviction proceeding in exchange for the concessions made by the Government in this Agreement, except as otherwise provided herein.

**5. Defendant's Acknowledgement of Effective Assistance of Counsel:**

The Defendant acknowledges he has reviewed the merits of the charges and all possible defenses he may have with his attorney, including, but not limited to, the right to file motions with the Court. The Defendant acknowledges he has had sufficient time to consult with his attorney on such matters and all possible defenses he may have. Further, by signing this Plea Agreement, the defendant acknowledges he believes he has received effective assistance of counsel, and he has had sufficient time to consult with his counsel regarding this plea agreement and the punishment which may be imposed.

The Defendant voluntarily and knowingly waives his right to file pretrial motions, to have a hearing on any such pretrial motion, previously filed or otherwise, and to have a trial on the charges brought against him in this case.

**6. Government's Agreement**

The Defendant agrees to plead guilty to COUNTS EIGHT, TWELVE, FOURTEEN, FIFTEEN and SEVENTEEN of the Indictment. The Parties further note, pursuant to the provisions of Rule 11(c)(1)(B):

    (A) the Government agrees not to oppose a maximum level adjustment for acceptance of responsibility pursuant to Section 3E1.1 of the advisory Senencing Guidelines,
    (B) the Government agrees not to oppose the Defendant's request that he be sentenced at the low end of the range for the advisory sentencing guidelines as calculated by the United States Probation officer,
    (C) the Government will not oppose the Defendant's request that his sentence for each count run concurrent, and
    (D) following sentencing, the Government will dismiss the remaining counts naming this Defendant.

The Defendant understands the Court is not obligated to grant the 11(c)(1)(B) recommendations contained in the immediately preceding paragraphs. The Defendant further understands it is within the complete discretion of the Court as to the sentence to be imposed on the Defendant. The Defendant will not be permitted to withdraw his agreement to plead guilty because of the Court's decision in imposing such a sentence. Moreover, the Government reserves the right to advocate in support of the Court's judgment should this case be presented to an appellate court.

Except as expressly stated above, the Defendant and the Government have made no other Rule 11(c)(1)(B) recommendations as to the applicability or inapplicability of any other advisory sentencing guideline provisions, policy statements or sentencing factors; provided, however, the Government retains all rights to oppose any request for any downward adjustment in the offense level, except as expressly set forth in the immediately preceding sub-paragraphs.

The Defendant understands and agrees nothing in this Plea Agreement shall prohibit the Government from presenting all relevant facts, information and evidence to the United States Probation Office and to the Court. The Defendant understands and agrees, pursuant to U.S.S.G. §6B1.4(d), the District Court may reject any of these Rule11(c)(1)(B) sentencing recommendations in whole or in part. In the event the District Court rejects any Rule 11(c)(1)(B) sentencing recommendation, the Defendant and the United States Attorney shall remain bound by all other terms of this plea agreement.

To the extent the parties have projected sentencing ranges in reliance on the above projections, such estimations are not binding on the parties, on the United States Probation Office, or on the District Court. The Defendant will not be permitted to withdraw his guilty plea

if the sentencing ranges as determined by the District Court differ from those projected by the parties or by the Probation Office.

## 7. Reservation of Rights

The Government and Defendant each reserve the right to: (1) bring its version of the facts of this case to the attention of the probation office in connection with that Office's preparation of a presentence report; (2) dispute sentencing factors or facts material to sentencing in the presentence report; and (3) seek resolution of such factors or facts in conference with opposing counsel and the United States Probation Office. All parties reserve full right of allocution as to the appropriate sentence the Defendant should receive, unless otherwise provided above.

Defendant further understands this agreement binds only the United States Attorney's Office for the Western District of Texas and the Defendant. The Defendant acknowledges his full understanding that by this plea agreement, no representations or agreements have been made or entered into with any other United States Attorney or any other federal or state prosecutor concerning other pending or possible offenses or charges.

This written plea agreement constitutes the entire agreement between the parties and shall not be modified except by agreement in open court or in a supplemental plea agreement signed by all the parties.

Respectfully submitted,

ROBERT PITMAN
UNITED STATES ATTORNEY

DATE: 09/06, 2012            BY: _____
                                  BETTINA J. RICHARDSON
                                  Assistant United States Attorney

8

DATE: 8-31-12, 2012

_____
DEBRA PARKER
Attorney for the Defendant

I HAVE READ (OR HAD READ TO ME) THE ABOVE PLEA AGREEMENT IN ITS ENTIRETY AND AGREE TO THE TERMS SET FORTH IN IT. ADDITIONALLY, I HAVE READ (OR HAD READ TO ME) THE FACTUAL BASIS CONTAINED HEREIN AND AGREE TO THE FACTS SET FORTH IN THE FACTUAL BASIS.

DATE: 8/31/12, 2012

_____
EDDIE RAMOS
Defendant

9